| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Court File No.: _____

Thomas Auld,

    Plaintiff,

v.

Daugherty Systems, Inc., d/b/a
Daugherty Business Solutions,

    Defendant.

**COMPLAINT AND JURY DEMAND**

The Plaintiff, Thomas Auld, for his Complaint against Defendant, states and alleges as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff, Thomas Auld, is a natural person who resides in the County of Anoka, State of Minnesota.

2. Defendant Daugherty Systems, Inc. is a Missouri corporation, conducting business in the County of Hennepin, State of Minnesota. Defendant Daugherty Systems is the parent organization of Defendant Daugherty Business Solutions. Defendant Daugherty Systems, Inc. and Defendant Daugherty Business Solutions are collectively referred to herein as "Defendant."

3. Defendant Daugherty Business Solutions conducts business in the County of Hennepin, State of Minnesota.

4. Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of Minnesota Statutes § 181.931.

5. The acts alleged in this complaint fall within the general subject matter jurisdiction of this Court.

6. Venue is proper in the County of Hennepin, State of Minnesota, as the acts and/or omissions giving rise to this Complaint occurred in the County of Hennepin, State of Minnesota.

## FACTS

7. Plaintiff began his employment with Defendant on or around September 14, 2009.

8. Plaintiff excelled in his role with Defendant and successfully implemented initiatives for many of Defendant's clients.

9. In or around November 2014, Plaintiff spoke with Daugherty's Regional Vice President, John Wirth ("Wirth") about his desire to transition out of Defendant in a way that would not damage any of Defendant's client relationships or initiatives.

10. Plaintiff was upfront with Defendant and explained what employment opportunities he might pursue. Plaintiff told Defendant that he may open his own business, may join another consulting firm, or may accept a corporate position.

11. Wirth expressed his support for whatever Plaintiff would want to do next, including Plaintiff starting his own independent consulting firm.

12. Around the same time, Defendant had an opportunity to work on a project for Best Buy. Managing Director, Joe Westermeyer ("Westermeyer") approached Plaintiff and asked him to stay and lead the Best Buy initiative until it was off the ground. Wirth had discussions with Plaintiff about the same.

13. Plaintiff and Wirth ultimately agreed that Plaintiff would remain employed with Daugherty until March 31, 2015 ("Transition Period") to help transition and/or complete the Best Buy project.

14. There were several components to the agreement reached between Plaintiff and Defendant for Plaintiff's continued employment through March 31, 2015.

15. First, Plaintiff and Defendant reached agreement on an Incentive Compensation Package. This provided for incentive payments for quarter three and quarter four of 2014 and incentive payments for quarter one of 2015.

16. Second, Plaintiff agreed that he would not resign from employment with Defendant or actively look for another position that would shorten the Transition Period.

17. In addition, Defendant agreed that it would not "surprise" Plaintiff with a shorter Transition Period.

18. Finally, Defendant agreed to provide Plaintiff with a Separation Package that would permit him time to find suitable employment following his separation from Defendant.

19. Plaintiff honored his obligation under the agreement and refrained from actively looking for or accepting any other position during the Transition Period. In doing so, Plaintiff relied on Defendant's promise that it would provide him with his Incentive Compensation Package along with the Separation Package following his departure from the company.

20. Defendant and Plaintiff began finalizing the exact terms of the Separation Package in or around December 2014. The Incentive Compensation Package was complete in early December 2014. Plaintiff actively worked with Wirth to sort out the Separation Package details via email, text messages, and phone calls.

21. However, on or about February 2, 2015, Defendant notified Plaintiff that it had decided to transition Plaintiff out of the company prior to the end of the Transition Period based on Defendant's financial circumstances.

22. Defendant offered Plaintiff the following Separation Package:

  a. Defendant would pay Plaintiff $38,500 in equal payments through April 2015;

  b. The quarter four 2014 incentive compensation would be paid to Plaintiff in full;

  c. The quarter one 2015 incentive compensation would be paid to Plaintiff based on performance;

  d. Defendant would pay Plaintiff's health benefits through June 2015; and

  e. Plaintiff would transition the Best Buy project to another employee and his last day with Defendant would be February 13, 2015.

23. Plaintiff and Wirth discussed the terms in the early morning on or around February 9, 2015, and Plaintiff accepted the terms. Plaintiff sent Wirth an email on February 10, 2015 confirming the terms and their agreement.

24. On or about February 9, 2015, Daugherty advised Plaintiff that due to a financial change within Best Buy, the Best Buy initiative was not moving forward with the exception of one element, which Plaintiff led with a small team of Defendant's employees. This particular element was on schedule to be completed by February 12, 2015.

25. Also on this day, Dora Royzman ("Royzman") (Program Manager) advised Plaintiff that he would not be part of the final elaboration sessions on the Best Buy initiative.

26. Plaintiff voiced his opposition to this plan and explained that he did not think it was in the best interest of the client to replace him at that point in the project. Other employees on the team similarly voiced their disapproval of Plaintiff's departure.

27. Royzman agreed to talk to Managing Director, Nick Reinbold ("Reinbold") about the matter. Shortly thereafter, Defendant notified Plaintiff that the decision had been made to keep him on the project through the February 13, 2015 separation date.

28. Later that morning, Reinbold asked to meet privately with Plaintiff.

4

29. During this meeting, Reinbold raised the issue of Plaintiff's early departure again. He and Plaintiff discussed whether Plaintiff should stay on the Best Buy project. Plaintiff did not understand why Reinbold was raising the issue again when Defendant already made the decision that Plaintiff would stay.

30. During this meeting, Plaintiff became uncomfortable with Reinbold's tone of voice and aggressive body language to the point he feared for his physical safety.

31. Reinbold was red in the face and obviously agitated.

32. Reinbold abruptly stood up and towered over Plaintiff before leaving the meeting room.

33. Plaintiff stayed in the room for a few minutes to avoid another interaction with Reinbold.

34. However, as Plaintiff exited the room, Reinbold began walking aggressively down the hall toward him.

35. Plaintiff sensed that Reinbold was going to run into him intending to cause him physical harm, so Plaintiff moved out of the way and said, "Don't push me."

36. Reinbold responded, "What did you say?"

37. Reinbold still looked angry. However, the heated interaction was interrupted when two women walked by.

38. Plaintiff was shocked and frightened. He sent a text message to Wirth to report the incident and Reinbold's assault. Plaintiff texted Wirth, "I felt physically threatened."

39. Wirth did not respond to Plaintiff's report.

40. Late in the day on February 9, 2015, Plaintiff received a message from Reinbold instructing Plaintiff to attend a meeting at 9:00 am on the morning of February 10, 2015.

5

41. At the February 10, 2015 meeting, Reinbold told Plaintiff that he was being pulled off of the Best Buy account and to leave Defendant. Reinbold told Defendant that his Seperation Package and Incentive Compensation Package was being reevaluated, but that he was still employed.

42. In this meeting, Plaintiff also made a report to Defendant's HR Representative, Inna Suleman ("Suleman"). Plaintiff told Suleman that he felt physically threatened by Reinbold and that he did not feel safe being in a room alone with Reinbold.

43. On February 11, 2015, Plaintiff attended a meeting with Suleman and Chief Financial Officer, Mike Garufalo ("Garufalo").

44. During this meeting, Garufalo terminated Plaintiff's employment.

45. Garufalo represented that Defendant was terminating Plaintiff for "conduct." Garufalo also explained that the things that took place over the last couple of days had accelerated his exiting Defendant and Best Buy.

46. Plaintiff understood this to be a direct reference to Reinbold's assault and Plaintiff's reports to Wirth and Suleman about the same.

47. Plaintiff had never been disciplined or otherwise counseled about his "conduct," or any other aspects of his job. Defendant later provided Plaintiff with an updated termination document citing "other" as a reason for his termination

48. During this meeting, Garufalo represented that he was attending on behalf of Wirth, who supported Plaintiff's termination.

49. Defendant offered Plaintiff a severance package with a total payment of approximately $15,000.00. This was substantially less than the Separation Package and other benefits previously agreed to by Plaintiff and Defendant.

6

50.     Defendant escorted Plaintiff off of the premises.

## COUNT I
## RETALIATION IN VIOLATION OF THE
## MINNESOTA WHISTLEBLOWER ACT

Plaintiff re-alleges each and every paragraph of this Complaint.

51.     Plaintiff, in good faith, reported and opposed what he believed to be violations of law and regulations, including but not necessarily limited to, Minn. Stat. § 609.221, *et seq.* and common law assault.

52.     As a result of his reports and opposition, Defendant retaliated against Plaintiff in violation of the Minnesota Whistleblower Act, Minn. Stat. § 181.932 *et seq.* when Defendant took adverse action against Plaintiff, including withdrawing Defendant's separation package offer and incentive compensation package, and terminating Plaintiff's employment.

53.     These actions were performed by Defendant with malice and/or reckless disregard for the rights of Plaintiff and others.

54.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic harm, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT II
## BREACH OF CONTRACT

Plaintiff re-alleges each and every paragraph of this Complaint.

55.     In exchange for Plaintiff's agreement to remain employed with Defendant through March 31, 2015 and not seek other employment, Defendant offered Plaintiff the following: (1) incentive payments for quarters three and four of 2014 and quarter one of 2015; (2) the promise that it would not "surprise" Plaintiff and end his employment early; and (3) agreement to provide

Plaintiff with a separation package that would allow Plaintiff time to find suitable alternative employment following his departure from Defendant.

56. Plaintiff accepted Defendant's offer and a contract was formed between Plaintiff and Defendant.

57. Plaintiff honored his obligations under the contract.

58. Defendant materially breached the contract by shortening Plaintiff's employment, failing to pay Plaintiff all of the incentive payments, and failing to provide Plaintiff with a separation package, as agreed upon between the Parties.

59. Defendant's material breach of the contract resulted in damages to Plaintiff, including, but not limited to, loss of wages, loss of incentive payments, and loss of the agreed upon separation package.

60. Defendant offered Plaintiff a separation package that included: (1) $38,500 in equal payments through April 2015; (2) quarter four incentive compensation; (3) quarter one 2015 incentive compensation (4) health benefits through June 2015; and (5) employment through February 13, 2015, in exchange for Plaintiff's agreement to remain employed with Defendant to lead a project with Defendant's client, Best Buy.

61. Plaintiff accepted Defendant's offer and a contract was formed between Plaintiff and Defendant.

62. Plaintiff honored his obligations under the contract.

63. Defendant materially breached the contract when it abruptly terminated Plaintiff's employment and failed to provide Plaintiff with the separation payment and health benefits contained in the contract.

64. Defendant's material breach of the contract resulted in damages to Plaintiff, including, but not limited to, loss of payment and loss of health benefits.

65. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages in the form of lost wages and benefits, emotional distress, pain and suffering, and other significant damages.

## COUNT III
## PROMISSORY ESTOPPEL

Plaintiff re-alleges each and every paragraph of this Complaint.

66. Plaintiff pleads this claim in the alternative to Count II, pursuant to Minnesota Rule of Civil Procedure 8.05(b).

67. Defendant promised Plaintiff a separation package to compensate Plaintiff for Plaintiff's agreement to stay employed with Defendant to facilitate implementation of the Best Buy initiative and Plaintiff's agreement to forego other employment opportunities until after he departed Defendant.

68. Defendant's promise was clear and definite.

69. Defendant intended for Plaintiff to rely on its promise of a separation package and Plaintiff did so rely.

70. Plaintiff relied on this promise to his detriment.

71. Defendant also promised Plaintiff that that it would provide him with a separation package that included: (1) $38,500 in equal payments through April 2015; (2) quarter four incentive compensation; (3) quarter one 2015 incentive compensation (4) health benefits through June 2015; and (5) employment through February 13, 2015.

72. Defendant's promise was clear and definite.

73. Defendant intended for Plaintiff to rely on its promise, and Plaintiff did so rely.

9

74. Plaintiff relied on this promise to his detriment.

75. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in the form of lost wages and benefits, emotional distress, pain and suffering, and other significant damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendant for the following:

a. Declaring that Defendant's acts and/or omissions described in this Complaint constitute violations of applicable state laws and common laws which protect Plaintiff;

b. Enjoining Defendant and its employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with it, from its unlawful acts;

c. That Defendant be required to make Plaintiff whole for its adverse, and retaliatory actions with compensatory damages and with interest of an appropriate inflation factor;

d. That Plaintiff be reinstated to his job, or, in the alternative, be awarded front pay and the monetary value of any employment benefits he would have been entitled to by Defendant;

e. That judgment be entered against Defendant in an amount to be established at trial for Defendant's material breach of contract or based on promissory estoppel;

f. That Plaintiff be awarded compensatory damages in an amount in excess of $50,000.00 for each of his claims, in an amount to be established at trial;

g. That the Court award Plaintiff his attorneys' fees, costs, and disbursements pursuant to statute, and;

    h.  That the Court grant other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE TRIAL BY JURY IS AVAILABLE**

Dated this 30th day of July 2015.

BAILLON THOME JOZWIAK & WANTA LLP

Christopher D. Jozwiak, No. 386797
Cassie C. Benson, No. 396376
100 South Fifth Street, Suite 1200
Minneapolis, MN  55402
Telephone:  (612) 252-3570
Facsimile: (612) 252-3571
cjozwiak@baillonthome.com
cbenson@baillonthome.com

*Attorneys for Plaintiff*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated this 30th day of July 2015.

_____
Christopher D. Jozwiak

11